

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-12-2003

# Casey v. Natl Elec Benefit

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4330

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Casey v. Natl Elec Benefit" (2003). *2003 Decisions.* Paper 117.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/117

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4330

KEVIN CASEY,
                              Appellant

v.

NATIONAL ELECTRICAL BENEFIT FUND

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 01-cv-01116
(Honorable Christopher C. Conner)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 27, 2003
Before:  SCIRICA, *Chief Judge*, NYGAARD and AMBRO *Circuit Judges*

(Filed : November 12, 2003)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

        Plaintiff Kevin Casey appeals from an unopposed District Court order granting

summary judgment for defendant National Electrical Benefit Fund ("NEBF" or "the

Fund"). Casey now contends that the District Court erred in finding that the Trustees of NEBF did not abuse their discretion in denying him a disability pension. For the following reasons we will affirm.

**I.**

In July 1996, Kevin Casey applied for a disability pension from NEBF for a disability incurred July 17, 1984. NEBF denied Casey's claim for a disability pension because at the time his injury occurred he had earned seven service credits,[1] three fewer than the ten credits required for a disability pension under the effective plan on the date of injury. Two years later, in 1998, Casey requested reconsideration of the denial of the pension. The NEBF denied this request as well.

The NEBF Plan of Benefits was amended in 1988 to provide that a participant would become vested in the Fund after accruing five service credits. In 1993, Casey received a letter acknowledging that he was 100% vested in the Fund, based on his seven accrued service credits. This vested interest provided the right to receive a normal retirement benefit at a normal retirement age—not in a disability pension based on his 1984 injury. Nothing in the letter indicated that the amendments to the plan had altered NEBF's custom of determining disability benefits by referring to the plan in effect at the time of injury.

_____

[1]For the purposes of this appeal it is sufficient to state that a participant earns a service credit for each 1000 hours of employment performed. The number of service credits accrued cannot exceed the aggregate number of years worked.

Casey brought suit alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Casey did not oppose NEBF's motion for summary judgment, which the District Court granted, and he now appeals from the unopposed grant of summary judgment. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

## II.

Our review of an order granting summary judgment is plenary. *Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002). The court should apply the same test employed by a District Court under Federal Rule of Civil Procedure 56(c). *Id.* Accordingly, the District Court's grant of summary judgment in favor of NEBF was proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, where, as here, the benefit plan gives the administrator or fiduciary discretion to determine eligibility for benefits or construe terms of the plan,[2] we review the denial of benefits under an arbitrary and capricious standard. *Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136, 142 (3d Cir. 2000).[3]

---

[2]The plan of benefits in effect at the time of Casey's application stated, "The Trustees shall have full discretionary power and authority to construe and interpret the provisions of this Plan, the terms used herein . . . and exclusive power and authority to administer the Plan and to determine all questions of coverage and eligibility . . . ." Plan of Benefits for the NEBF (July 1, 1996) ("1996 Plan"), ¶ 19.

[3]We note however, that we would still affirm the grant of summary judgment if the Trustees' decision was reviewed under the de novo standard.

## III.

Casey failed to raise any issues before the District Court in opposition to defendant's summary judgment motion. In light of plaintiff's failure to object or to respond to the motion for summary judgment, we see no reason to disturb the order entered by that Court. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 176 (3d Cir. 1990). Nonetheless, reaching the merits of this argument, we would still affirm.

Casey argues that the NEBF Trustees' determination denying him disability benefits was arbitrary and capricious. Under this deferential standard, a plan administrator's interpretation of a plan may be disturbed "only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Courson*, 214 F.3d at 142 (internal quotation marks omitted). The denial of Casey's disability pension falls well within this discretionary standard.

The Plan of Benefits in effect at the time Casey completed his application for a disability benefit in 1996 (the "1996 Plan") provided that a participant who becomes disabled after 1981 "shall be entitled to a Disability Pension Benefit if . . . *at the time of the occurrence of the disability*: . . . (2) the Participant is entitled to a Vested Pension." 1996 Plan, ¶ 11.1(b) (emphasis added).[4] Uncontroverted evidence in the record also

---

[4]There is other language in the 1996 Plan that required the Trustees to look at the Plan in effect at the time of injury. Specifically, the 1996 Plan provided that the pension

(continued...)

shows that it is the long-standing practice of the NEBF to apply the rules in effect at the time a participant became disabled to determine whether he or she is eligible for a disability pension. *See* App. at 176 ¶ 4, 254-68.

In 1984, the year Casey became disabled, a participant was considered vested in the plan if that person had accumulated ten service credits. Casey does not contend that he was vested in the plan in 1984, or that he had more than seven service credits at that time. Therefore, Casey was not entitled to disability benefits at the time of his injury, which, according to the language of the plan and NEBF custom, constitutes the relevant date. Although the number of required vesting service credits was reduced to five by amendment in 1988, the only pertinent issue is whether Casey was vested in the plan at the time of his injury.[5] The record is clear that Casey only had seven vesting credits in 1984, and therefore was not vested at that time. The denial of benefits is in accordance with the facts of the case and language of the plan. Accordingly, we find no genuine issue of material fact as to whether the Trustees acted arbitrarily and capriciously.

---

[4](...continued)
application of a participant "whose effective date . . . is prior to the effective date of this Plan, shall be governed by the [Plan] and the rules, regulations, and/or policies in effect at the . . . effective date of the pension benefit." 1996 Plan, ¶ 33. The effective date for a participant who became disabled prior to 1987 is "six (6) months following the occurrence of the disability." *Id.* ¶ 13.3(a). The 1984 Plan was controlling at the time of Casey's effective date, therefore the rules of this Plan govern his application.

[5]We note that it would be inconsistent with the terms and goals of the plan to grant Casey a disability pension after he waited twelve years to file a claim when he would not have been eligible for the pension at the time he was injured.

Casey also argues that his benefits were reduced by an amendment to the plan in violation of the Anti-Cutback Rule, 29 U.S.C. § 1054(g).[6] Casey contends that NEBF conferred a vested benefit upon him with its November 9, 1993 letter stating that he was completely vested in the plan, only to eviscerate the vested benefit by stating that it was going to apply a different set of rules to his disability claim. Casey argues that because he was notified that he was vested in the Fund in 1993, a later finding that he was not vested at the time of his injury constitutes a reduction in his accrued benefit. Presumably, the heart of Casey's argument is that the later denial of benefits is sufficiently similar to a plan amendment to be prohibited by the Anti-Cutback Rule.

We find that the Anti-Cutback Rule has no application here. The denial of the disability benefit to Casey was based on the fact that he had not accumulated the requisite number of service credits at the time he was disabled, not as a result of a plan amendment. The plan amendment allowed Casey to qualify for a normal retirement benefit; however, it did not alter the practice of applying eligibility standards from the date of injury when determining disability benefits.

---

[6]This section states that:
> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . .
> (2) For purposes of paragraph (1), a plan amendment which has the effect of–
>> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy, or
>> (B) eliminating an optional form of benefit,
> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

The cases cited by Casey to support his argument under the Anti-Cutback Rule are inapposite, in that they concern reductions in benefits that had accrued to the plaintiffs. Under the facts in this case, no similar benefits had accrued to Casey at the time of his injury—for all purposes, the relevant date. We are not persuaded by Casey's arguments that NEBF acted in an arbitrary and capricious manner in denying him disability benefits.

For the foregoing reasons we will affirm the grant of summary judgment.

TO THE CLERK:

Please file the foregoing opinion.

/s/ Anthony J. Scirica
*Chief Judge*

8